**ORIGINAL**

# In the United States Court of Federal Claims

**FILED**

No. 12-390 T
Filed: August 20, 2014

AUG 20 2014

U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| MARK A. HILL, | 26 U.S.C. § 6402 (reducing overpayments to cover outstanding liabilities); |
| Plaintiff, *pro se*, | 28 U.S.C. § 1346; |
| v. | 31 U.S.C. § 3343 (check forgery insurance fund); |
| THE UNITED STATES, | 31 U.S.C. § 3716 (Treasury Offset Program); |
| Defendant. | *Pro Se*; |
| | RCFC 56 (summary judgment). |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Mark A. Hill**, Chillicothe, Ohio, Plaintiff, *pro se*.

**Michael J. Ronickher**, United States Department of Justice, Tax Division, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND FINAL JUDGMENT

**BRADEN**, *Judge*.

### I.    RELEVANT FACTUAL BACKGROUND.[1]

Mark A. Hill ("Plaintiff" or "Mr. Hill") is seeking payment of his misappropriated 2007 tax refund check for $1,182.46, as well as interest, punitive damages, and a ruling exempting this payment from the Treasury Offset Program, established by 31 U.S.C. § 3716. Compl. 4–5; *see also* Pl. Mot. 8–9.

On August 5, 2008, the Internal Revenue Service ("IRS") informed Mr. Hill that his tax return for 2007 "was received but could not be found." Compl. ¶ 2, Exs. 1, 13.

---

[1] The relevant facts discussed herein were derived from: Plaintiff's June 18, 2012 Complaint ("Compl.") and eighteen attached unnumbered exhibits ("Compl. Exs. 1–18"); Plaintiff's December 6, 2013 Motion For Summary Judgment ("Pl. Mot."), and the Government's May 1, 2014 Response ("Gov't Resp.").

On January 19, 2009, the IRS sent a letter to Mr. Hill instructing him to send "a newly signed copy of the 2007 tax return." Compl. Ex. 2.

On February 27, 2009, Mr. Hill was sentenced to an eight-year prison term. Compl. Ex. 3 (containing the Judgment Entry re: December 2008 criminal prosecution). After sentencing, he was transported to the Corrections Reception Center ("CRC") in Orient, Ohio, where he executed a copy of his 2007 tax return sometime in March 2009. On April 2, 2009, he was transferred to the Chillicothe Correctional Institution in Chillicothe, Ohio. Compl. Ex. 13.

On April 6, 2009, the IRS Processing Center received Mr. Hill's 2007 tax return and processed it on June 5, 2009. Compl. Ex. 14. The IRS determined that Mr. Hill was entitled to a tax refund of $1,182.46, and, on June 5, 2009, mailed a check for that amount to the address provided on Plaintiff's 2007 Form 1040 tax return. Compl. Ex. 14; Gov't Resp. Ex. 1 at A-2.

On June 29, 2009, the refund check was returned by the United States Postal Office, marked undeliverable. Compl. Ex. 14. The IRS then issued a refund notice and requested Mr. Hill's current mailing address. Compl. Ex. 14. This notice was received by prison authorities who "erroneously delivered" it to another inmate also named Mark Hill ("Hill II"),[2] although it contained Mr. Hill's personal information, including his taxpayer identification number and social security number, which Hill II used to impersonate Mr. Hill and obtain the refund check. Gov't Resp. 2; Gov't Resp. Ex. 2 at A-5; Compl. Ex. 14. On July 9, 2009, the IRS was contacted via its toll-free phone number by an individual who claimed the refund and provided an address in Waverly, Ohio. Compl. Ex. 14; Gov't Resp. Ex. 2 at A-5. On July 24, 2009, the IRS issued the refund to the Waverly, Ohio address. Compl. Ex. 14. Hill II subsequently cashed the check at First Check Cash Advance, endorsing it as "Mark Hill" without the middle initial, even though it was addressed to "Mark A. Hill." Gov't Resp. Ex. 2 at A-5.

On October 21, 2009, the IRS informed Mr. Hill that his 2007 tax refund check $1,182.46 was issued on July 24, 2009. Mr. Hill promptly submitted an IRS Form 3911, Taxpayer Statement Regarding Refund. Compl. Ex. 5. On January 20, 2010, the IRS notified Mr. Hill that it would take four to six weeks to trace the refund check. Compl. Ex. 6. On August 2, 2010, the IRS informed Mr. Hill that an additional forty-five days was needed to complete the investigation. Compl. Ex. 8. Mr. Hill subsequently requested assistance from the Taxpayer Advocate Service, who, on May 10, 2011, provided him with a copy of the cancelled 2007 tax refund check and the location where it was cashed. Compl. Exs. 11, 12.

On May 19, 2011, Mr. Hill sent a letter to Secretary of the Treasury, requesting assistance in obtaining his refund. Compl. Ex. 13. On August 1, 2011, Mr. Hill received a response from the IRS Wage and Investment Division, explaining that his refund was misappropriated and providing information to resolve the matter. Compl. Ex. 14. Thereafter, Mr. Hill submitted an Affidavit of Accusation on September 21, 2011, to six separate organizations to obtain the 2007 tax refund, which led to an investigation of the Chillicothe

---

[2] The identity of the individual who cashed Mark Hill's 2007 tax refund check is redacted in the OSHP Investigation Report, although the Government's Response, which was not filed under seal, states that his name is Mark Hill. *See* Gov't Resp. 2 & Ex. 2.

Correctional Institution, the Institution Liaison, and Investigator from the Ohio State Highway Patrol ("OSHP"). Compl. Ex. 15; Gov't Resp. Ex. 2.

On October 12, 2011, Mr. Hill completed and submitted IRS forms for "Claims Against the United States For the Proceeds of a Government Check" (FMS Form 3858 and FMS form 1133), as directed by the Financial Management Service of the Department of the Treasury and the OSHP Investigator. Compl. ¶¶ 18–19 (citing OSHP Case #11-036035-0900); *id.* Ex. 16. On November 30, 2011, Mr. Hill received correspondence from a Legal Administrative Specialist of the Check Resolution Division asking for additional information, which Plaintiff submitted on December 13, 2011. Compl. Exs. 17, 18.

## II. PROCEDURAL HISTORY.

On June 18, 2012, Mark Hill filed a Complaint in the United States Court of Federal Claims, pursuant to RCFC 9(m) and 28 U.S.C. § 1346, to obtain his 2007 federal income tax refund, in the amount of $1,182.46, plus appropriate interest for each year beyond 2008, and $1,182.46 in punitive damages. Compl. at 4–5. The Complaint also demanded the costs of this action be paid and that the monetary judgment awarded not be subject to any offset, including court costs and student loan debt. Compl. at 4–5.

On December 18, 2012, the Government filed an Answer, stating, *inter alia*, that "[P]laintiff is not entitled to recover for a second time any amounts that have been already paid to him by any agency of the United States," and that "this [c]ourt has no jurisdiction to hear Plaintiff's claim for punitive damages . . . because the United States has not waived its sovereign immunity for such claims." Answer ¶¶ 25–26. The Government also stated that, pursuant to 26 U.S.C. § 6402, any recovery by Plaintiff may be credited against certain outstanding liabilities, including liability for any internal revenue tax. Answer ¶ 27.

On June 20, 2013, Plaintiff filed a Motion For Production Of Documents and requested a court order requiring Trooper S. Wells and Investigator P. Arledge "to produce, and provide Plaintiff, a report of facts and conclusions determined from the investigation of the misappropriated 2007 Federal Income Tax Refund Check in the amount of $1,182.46." On June 24, 2013, the court granted Plaintiff's June 20, 2013 Motion For Production Of Documents, construing the motion as "requesting a subpoena for production of documents in existence." Alternatively, in accordance with RCFC 31(a), the court stated that Plaintiff may depose the two individuals named in his Motion For Production Of Documents by written questions. In accordance with the court's June 24, 2013 Order, Trooper Sherri Wells produced the September 30, 2011 Ohio State Highway Patrol Report of Investigation, Constitutional Rights Waiver, and Statement Form ("OSHP Report"). *See* Gov't Resp. Ex. 2.

On December 6, 2013, Plaintiff filed a Motion For Summary Judgment ("Pl. Mot.").

On May 1, 2014, the Government filed an Opposition To Plaintiff's Motion For Summary Judgment ("Gov't Resp."). Plaintiff did not file a Reply.

## III. DISCUSSION.

### A. Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976). Congress has authorized the United States Court of Federal Claims to adjudicate "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]" 28 U.S.C. § 1346(a)(1).

In tax refund suits, the "jurisdiction of the [United States] Court of Federal Claims is limited by the Internal Revenue Code." *Waltner v. United States*, 679 F.3d 1329, 1332–33 (Fed. Cir. 2012); *see also United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4, 8–9 (2008) (explaining that a taxpayer suing in the United States Court of Federal Claims to obtain a refund must "comply with the tax refund scheme established in the Code"). Jurisdiction is established if: (1) the taxpayer has paid his full federal tax liability for the year for which he claims a refund; (2) before filing suit, the taxpayer timely files an administrative claim for the refund with the IRS for the amount at issue; and (3) subsequently, the taxpayer timely files suit "provid[ing] the amount, date, and place of each payment to be refunded, as well as a copy of the refund claim" pursuant to RCFC 9(m). 2 CYC. OF FED. PROC. § 2:413 (3d ed.) (updated Aug. 2014); *see also* 26 U.S.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary[.]"); 26 U.S.C. § 6511(a) (setting the period of limitation on filing an administrative tax refund claim with the IRS); 26 U.S.C. § 6532(a) ("No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates."); *Shore v. United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993) (holding that a tax refund claim must be dismissed if the "principal tax deficiency has not been paid in full").

In addition, the United States Court of Federal Claims has jurisdiction under 31 U.S.C. § 3343 to determine whether a taxpayer is entitled to a replacement check from the Check Forgery Insurance Fund, since that statute is money-mandating. *See Curtin v. United States*, 91

Fed. Cl. 683, 687–88 (2010) (determining that Section 3343 is "a money-mandating statute"). To establish entitlement to relief under Section 3343, the taxpayer must establish that:

> (1) the check was lost or stolen without the fault of the payee or a holder that is a special endorsee and whose endorsement is necessary for further negotiation;
>
> (2) the check was negotiated later and paid by the Secretary or a depositary on a forged endorsement of the payee's or special endorsee's name; and
>
> (3) the payee or special endorsee has not participated in any part of the proceeds of the negotiation or payment.

31 U.S.C. § 3343(b); *see also Curtin*, 91 Fed. Cl. at 688 (discussing the requirements of Section 3343).

In this case, the court has jurisdiction to adjudicate the claims alleged in the June 18, 2012 Complaint under both 28 U.S.C. § 1346 and 31 U.S.C. § 3343.

### 1.  28 U.S.C. § 1346.

As to Section 1346, the evidence demonstrates that Plaintiff filed his 2007 Individual Federal Income Tax Return on April 15, 2008 and paid the federal tax liability due for 2007. Compl. Exs. 2, 14; Gov't Resp. Ex. 1 at A-2. The evidence also demonstrates that the IRS determined that Plaintiff overpaid his 2007 taxes by $1,176 and was entitled to a refund in the amount of $1,182.46 ($1,176 plus $6.46 in interest). Gov't Resp. Ex. 1 at A-2.

Plaintiff also has established that he timely filed an administrative claim for his 2007 refund check with the IRS. The Internal Revenue Code requires a taxpayer to file a claim for refund with the IRS filed within "3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later[.]" 26 U.S.C. § 6511(a); *see also Clintwood Elkwood Mining*, 553 U.S. at 5 ("[U]nless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund . . . may not be maintained in any court." (quoting *United States v. Dalm*, 494 U.S. 596, 602 (1990))). Therefore, in order to comply with the limitations set forth in 26 U.S.C. § 6511(a), Plaintiff must have filed a refund claim with the IRS no later than April, 15, 2011. *See* 26 U.S.C. § 6511(a). Plaintiff, however, did not submit the IRS formal claims documents—Form FMS-3858 (Claims Document) and Form FMS-1133 (Claim Against the United States for the Proceeds of a Government Check)—until October 12, 2011. Compl. Ex. 16; Program Operations Manual System (POMS) GN 02401.908, Social Security Administration (April 21, 2014).[3]

"Under the informal claims doctrine, a timely claim with purely formal defects is permissible if it fairly apprises the IRS of the basis for the claim within the limitations period." *Computervision Corp. v. United States*, 445 F.3d 1355, 1364 (Fed. Cir. 2006); *see also Western Co. of N. Am. v. United States*, 323 F.3d 1024, 1035 (Fed. Cir. 2003) (recognizing that the informal claim doctrine applies where the taxpayer repeatedly requested information from the

---

[3] *Available at* http://policy.ssa.gov/poms.nsf/lnx/0202401908.

IRS). The record in this case establishes that Plaintiff made several *informal* claims to the IRS within the three-year period. The United States Supreme Court has held that "a [timely] notice fairly advising the Commissioner of the nature of the taxpayer's claim . . . will nevertheless be treated as a[n effective] claim, where formal defects . . . have been remedied by amendment filed after the lapse of the statutory period." *United States v. Kales*, 314 U.S. 186, 194 (1941). In *Western*, the IRS erroneously assessed the taxpayer a "failure-to-file" penalty. *Western*, 323 F.3d at 1035. The taxpayer, in response, "repeatedly requested information about the basis for the penalty but did not file a formal claim." *Id.* These requests were documented in writing. *Id.* Under these circumstances, the taxpayer's refund claim was not barred, because, the plaintiff "made repeated requests for information that would have allowed filing of an informed claim. . . . [and that served to] put the IRS on notice of [plaintiff's] challenges." *Id.* at 1034–35.

In this case, Plaintiff first inquired into the status of his refund on August 5, 2008, after which the IRS confirmed that his 2007 tax return was received, but could not be found. Compl. Ex. 1. On January 19, 2009, the IRS sent a letter to Plaintiff instructing him to send "a newly signed copy of the original 2007 tax return." Plaintiff did so in March of 2009. Compl. Ex. 2. The IRS Processing Center received the new 2007 tax return on April 6, 2009 and processed it on June 5, 2009. Compl. Ex. 14. The IRS determined that Plaintiff was entitled to a tax refund of $1,182.46, and, on June 5, 2009, mailed a check for that amount to the address provided on Plaintiff's 2007 Form 1040 tax return. Gov't Resp. Ex. 1 at A-2; Compl. Ex. 14. Plaintiff continued to correspond with the IRS and various other parties, within the period of limitations established by 26 U.S.C. § 6511, to obtain his refund check, including submitting Form 3911 (Taxpayer Statement Requiring Refund), providing the IRS with information to facilitate its effort to locate Plaintiff's refund check. Compl. ¶ 7, Ex. 5. Therefore, Plaintiff repeatedly requested information via written correspondence regarding the status of his refund throughout the limitations period and "put the IRS on notice" of the basis for his claim. *See Western*, 323 F.3d at 1035. Therefore, under the informal claims doctrine, Plaintiff's suit is not barred for failing to timely file an administrative refund claim with the IRS.

In addition, Plaintiff timely filed the June 18, 2012 Complaint in the United States Court of Federal Claims, complying with the requirements of RCFC 9(m). To timely file suit for a tax refund, Plaintiff must have filed not before "the expiration of 6 months from the date of filing the claim . . . unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates." 26 U.S.C. § 6532(a). In this case, Plaintiff began submitting "informal claims" on August 5, 2008 and the IRS was "put on notice" of his refund claim on June 5, 2009 at the latest. Compl. Exs. 1, 14. Both of these dates are more than six months prior to the filing of Plaintiff's Complaint in the Court of Federal Claims. *See* 26 U.S.C. § 6532(a). Moreover, Plaintiff commenced this suit prior to "the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates," because the Secretary never mailed to Plaintiff a "notice of disallowance of the part of the claim to which the suit . . . relates." 26 U.S.C. § 6532(a).

### 2. 31 U.S.C. § 3343.

The court also has jurisdiction under 31 U.S.C. § 3343, since that statute is a money-mandating source of substantive law and the facts alleged in the June 18, 2012 Complaint satisfy the requirements for relief. *See Curtin*, 91 Fed. Cl. at 687–88. Indeed, the Government does not contest that Plaintiff "meets the statutory criteria" for relief. Gov't Resp. 3 ("The [United States Court of Federal Claims] has found [Section 3343] is money-mandating and thus that jurisdiction properly exists over [P]laintiff's claims for a new check. Here, the facts indicate that [P]laintiff meets the statutory criteria." (citing *Curtin*, 91 Fed. Cl. at 687)).

\* \* \*

For these reasons, the United States Court of Federal Claims has jurisdiction to adjudicate the claims alleged in the June 18, 2012 Complaint.

### B. Standard Of Review For *Pro Se* Litigants.

The pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"). It has been the tradition of this court to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Manuel v. United States*, 78 Fed. Cl. 31, 34 (2007) (quoting *Ruderer v. United States*, 188 Ct. Cl. 456, 468 (1969)). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995); *see also Wozniak v. United States*, 219 Ct. Cl. 580, 581 (1979) (holding that even in a *pro se* tax suit a timely claim for refund must be filed to invoke the court's jurisdiction).

### C. Standard Of Review For A Motion For Summary Judgment Pursuant To RCFC 56.

On a motion for summary judgment, the moving party must show that there is no genuine issue as to any material fact, and that he is entitled to judgment as a matter of law. *See Moden v. United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005) ("Summary judgment is only appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."); *see also* RCFC 56(c). Only genuine disputes of material facts that might affect the outcome of the suit will preclude entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). The existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. To avoid summary judgment, the nonmoving party must put forth evidence sufficient for a reasonable finder of fact to return a verdict for that party. *Id.* at 248–50.

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (holding the moving party must meet its burden "by 'showing'—that is, pointing out to the [trial court]—that there is an absence of evidence to support the nonmoving party's case."); *see also Riley & Ephriam Constr. Co. v. United States*, 408 F.3d 1369, 1371 (Fed. Cir. 2005) ("The moving party bears the burden of demonstrating the absence of a genuine issue of material fact."). Once the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact for trial. *See Novartis Corp. v. Ben Venue Labs, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (explaining that, once a movant demonstrates the absence of a genuine issue of material fact, "the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial").

On a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Anderson*, 477 U.S. at 255 (holding that "all justifiable inferences be drawn in [the non-moving party's] favor."); *Casitas Mun. Water Dist. v. United States*, 543 F.3d 1276, 1283 (Fed. Cir. 2008) ("[A]ll justifiable inferences [are drawn] in favor of the party opposing summary judgment.").

### D.   Plaintiff's May 20, 2014 Motion For Summary Judgment.

#### 1.   Plaintiff's Argument.

Plaintiff seeks summary judgment for "all relief sought in the complaint, including, but not limited to: (1) payment of $1,182.46 plus interest;" (2) an award of punitive damages that this court deems appropriate "for the undue delay caused by [the Government] in resolving this issue;" (3) an order that prohibits offsetting his 2007 refund with any debts owed to federal agencies not past due at the time when the 2007 tax refund was originally issued; and (4) an order compelling the Government "to pay the full cost of the action, including any reasonable amount determined to compensate Plaintiff's expenses in pursuing this case." Pl. Mot. 8–9.

To qualify for relief under 31 U.S.C. § 3343, *i.e.*, obtain the 2007 tax refund check, "it must be established that: (1) the check was lost or stolen without the fault of the payee, (2) the check was negotiated and paid by the Treasurer on a forged endorsement of Payee's name, and (3) the payee did not participate directly or indirectly in the proceeds of such negotiation or payment." Pl. Mot. 7 (citing 31 U.S.C. § 3343(b) and *Curtin*, 91 Fed. Cl. at 688). Plaintiff contends that the OSHP Report establishes undisputed facts that satisfy all three elements, which are not contested by the Government.

In addition, Plaintiff argues that the Government's defense against punitive damages is "a legal question requiring a *de novo* determination by this [court]." Pl. Mot. 7 (citing Gov't Answer ¶ 26 ("[T]his [c]ourt has no jurisdiction to hear [P]laintiff's claim for punitive damages . . . because the United States has not waived sovereign immunity for such claims.")). Plaintiff urges this court to consider the fact that the IRS's failure to redact Plaintiff's identification number on the notice it issued to the CRC facilitated the other individual's ability to appropriate Plaintiff's refund check. Plaintiff also contends that the IRS's loss of Plaintiff's original tax return "contributed to the resulting misappropriation." Pl. Mot. 7. In addition,

Plaintiff asserts that the IRS failed to take adequate action to resolve this issue after being informed by an Ohio law enforcement officer that Plaintiff's refund check had been cashed by a different individual, and that Plaintiff had not participated in the misappropriation, either directly or indirectly. Pl. Mot. 7.

Plaintiff also argues that his 2007 refund check is not subject to the United States Department of Treasury Offset Program, that "allows the Treasury to transfer a taxpayer's refund to another federal agency to pay a taxpayer's past due debt," because Plaintiff did not have any past due debts owed to any federal agency when his tax refund was due in 2008, or in 2009 after he resubmitted his 2007 tax return. Pl. Mot. 8 (citing 31 U.S.C. §3720A(a)). Accordingly, if his 2007 refund was reduced, pursuant to 26 U.S.C. 6402(d), that reduction would amount to "an offset by illegal exaction." Pl. Mot. 8.

### 2. The Government's Response.

The Government confirms that the "operative facts of the case" are not disputed. Gov't Resp. 2. Accordingly, the Government agrees that Plaintiff qualifies for reissuance of his 2007 tax refund check, in the amount of $1,182.46, under 31 U.S.C. § 3343.[4] Gov't Resp. 1. But, "summary judgment should be denied to the extent Plaintiff seeks interest [on that amount], punitive damages, or a ruling that payment [of that amount] is not subject to [the Treasury Offset Program]." Gov't Resp. 6.

First, Plaintiff cannot recover interest on his 2007 tax refund, because 31 U.S.C. § 3343, does not provide for recovery of interest. Gov't Resp. 4 (citing 31 U.S.C. § 3343(b) ("The Secretary of the Treasury shall pay from the Fund to a payee or special endorsee of a check drawn on the Treasury or a depositary designated by the Secretary the amount of the check without interest[.]"). A reissuance of a tax refund check under the Check Forgery Insurance Fund, established by 31 U.S.C. § 3343, is technically a new payment, not a tax refund. So, "[w]hile tax overpayments are refunded with interest," new payments pursuant 31 U.S.C. § 3343 are made in "the amount of the [original] check without interest." Gov't Resp. 4 (citing *Clark v. United States*, 206 F. Supp. 2d. 954 (N.D. Ind. 2002), *aff'd* 326 F.3d 911 (7th Cir. 2003)).

Second, the United States Court of Federal Claims does not have jurisdiction to adjudicate Plaintiff's claim for punitive damages. The Tucker Act is "only a jurisdiction statute; it does not create any substantive right enforceable against the United States for money damages." Gov't Resp. 4–5 (internal quotations omitted) (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980) and *Testan*, 424 U.S. at 398)). Therefore, Plaintiff must "identify a substantive right for money damages against the United States separate from the Tucker Act."

---

[4] The facts establish that Plaintiff has met the conditions established by 31 U.S.C. § 3343. Gov't Resp. 3. First, the 2007 refund check was "deliberately redirected by another individual" "without Plaintiff's knowledge." Gov't Resp. 3 n.4. Second, that individual cashed the check, endorsing it under "Mark Hill." Gov't Resp. 3 n.4. Third, "according to the OSHP investigation," Plaintiff was not aware of the individual impersonating him, and therefore hadn't "participated in any part of the proceeds of the negotiation or payment." Gov't Resp. 3 n.4.

Gov't Resp. 5 (internal quotations omitted) (quoting *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004)). Plaintiff's refund claim is made pursuant to 31 U.S.C. § 3343, but that Section does not contain a punitive damages provision. And, Plaintiff fails to identify an alternative source of law that would provide for recovery of punitive damages. As such, this court does not have jurisdiction to adjudicate Plaintiff's claim for punitive damages. Gov't Resp. 4.

Third, the reissuance of Plaintiff's 2007 tax refund check, under the Check Forgery Insurance Fund, is subject to the Treasury Offset Program, established by 31 U.S.C. § 3716, which "provides for offsets against any federal payments, except those specifically excepted, in the amount of any debt certified to the Secretary of the Treasury under the Debt Collection Act."[5] Pertinent case law indicates that a wide range of federal payments, including awards of attorney's fees and "repayment of improperly seized funds," are subject to offset. Gov't Resp. 6 (citing *United States v. Approximately $3,174.00 in U.S. Currency*, 928 F. Supp. 2d. 1040 (E.D. Wis. 2013)). Payments made pursuant to 31 U.S.C. § 3343, however, are not exempt from operation of the Treasury Offset Program. As a result, payment of Plaintiff's 2007 tax refund check would be "subject to offset . . . , should [P]laintiff have a qualifying debt." Gov't Resp. 6 (citing 31 U.S.C. § 3716(c)).

### 3. The Court's Resolution.

#### a. Plaintiff Is Entitled To $1,182.46.

Section 3343(b) provides that

(b) The Secretary of the Treasury shall pay from the Fund to a payee or special endorsee of a check drawn on the Treasury or a depositary designated by the Secretary the amount of the check without interest if in the determination of the Secretary the payee or special endorse establishes that—

> (1) the check was lost or stolen without the fault of the payee or a holder that is a special endorsee and whose endorsement is necessary for further negotiation;

> (2) the check was negotiated later and paid by the Secretary or a depositary on a forged endorsement of the payee's or special endorsee's name; and

> (3) the payee or special endorsee has not participated in any part of the proceeds of the negotiation or payment.

31 U.S.C. § 3343(b).

---

[5] Plaintiff's December 6, 2013 Motion For Summary Judgment cites 26 U.S.C. § 6402 in addressing the issue of offset. Gov't Resp. 5 n.5. Section § 6402 "permits offsets from overpayments of tax," but a reissuance of Plaintiff's 2007 tax refund check, pursuant to 31 U.S.C. § 3343, is a new payment, not a tax refund. Gov't Resp. 5 n.5. Thus, 26 U.S.C. § 6402 does not apply. Gov't Resp. 5 n.5.

The evidence adduced by both parties, discussed herein, demonstrates that Plaintiff's claim meets the requisite conditions for payment of $1,182.46, under the Check Forgery Insurance Fund, 31 U.S.C. § 3343. Compl. Ex. 4; Gov't Resp. 2, 3 n.4; Gov't Resp. Ex. 2.

### b.    Interest.

Cognizant of Plaintiff's *pro se* status, the court considers the June 18, 2012 Complaint to allege two distinct claims: (1) a tax refund, pursuant to 28 U.S.C. § 1346; and (2) reissuance of his stolen June 5, 2009 refund check, pursuant to 31 U.S.C. § 3343. Compl. at 1 (citing 28 U.S.C. § 1346); Pl. Mot. 7 (arguing that Plaintiff qualifies for relief under 31 U.S.C. § 3343).

As discussed above, the United States Court of Federal Claims has jurisdiction to adjudicate a tax refund claim pursuant to 28 U.S.C. § 1346. The relevant governing statute concerning interest, 26 U.S.C. § 6611, provides: "Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax[.]" The IRS, in turn, has interpreted Section 6611 to allow, generally, the payment of interest "on any overpayment any tax . . . from the date of overpayment of the tax," with some exceptions. 26 C.F.R. § 301.6611-1;[6] *see also Marsh & McLennan Cos. v. United States*, 302 F.3d 1369, 1372–73 (Fed. Cir. 2002) (describing the interaction between 26 U.S.C. § 6611 and 26 C.F.R. § 301.6611-1). Relevant to Plaintiff's situation is section (j) of that regulation that provides:

> Refund of overpayment. No interest shall be allowed on any overpayment of tax imposed by subtitle A of the Code if such overpayment is refunded—
>
> (1) In the case of a return filed on or before the last date prescribed for filing the return of such tax (determined without regard to any extension of time for filing such return), within 45 days after such last date, or
>
> (2) After December 17, 1966, in the case of a return filed after the last day prescribed for filing the return, within 45 days after the date on which the return is filed.

---

[6] Section (g) defines the interest period:

Period for which interest allowable in case of refunds. If an overpayment of tax is refunded, interest shall be allowed from the date of the overpayment to a date determined by the district director or the director of the regional service center, which shall be not more than 30 days prior to the date of the refund check. The acceptance of a refund check shall not deprive the taxpayer of the right to make a claim for any additional overpayment and interest thereon, provided the claim is made within the applicable period of limitation. However, if a taxpayer does not accept a refund check, no additional interest on the amount of the overpayment included in such check shall be allowed.

26 C.F.R. § 301.6611-1(g).

However, in the case of any overpayment of tax by an individual (other than an estate or trust and other than a nonresident alien individual) for a taxable year beginning in 1974, "60 days" shall be substituted for "45 days" each place it appears in this paragraph.

26 C.F.R. § 301.6611-1(j).

Plaintiff timely filed his 2007 tax return on the "last date" for filing that return: April 15, 2008. Compl. ¶ 1; *see also* 26 C.F.R. § 301.6611-1(j)(1). Interest would be allowed, therefore, if the overpayment was not refunded within sixty days, *i.e.*, June 14, 2008. Since the IRS admitted to losing Plaintiff's 2007 tax return, the IRS unquestionably missed that sixty-day deadline. Compl. Ex. 1 (8/5/08 Letter from IRS to Mark Hill).

Instead, the IRS mailed the tax refund on June 5, 2009. Gov't Resp. Ex. 1 at A-2. Thus, pursuant to section 301.6611-1(g), Plaintiff is owed interest from the date of overpayment—April 15, 2008, through at least thirty days prior to the date of the refund check—May 6, 2009, which equals 386 days, excluding the end date. And, in fact, the June 5, 2009 tax refund included interest of $6.46 on the initial refund of $1,176.00, that seemingly reflects interest for this 386-day period. Gov't Resp. Ex. 1 at A-2. Therefore, Plaintiff has already received the interest to which he is entitled under the Internal Revenue Code, and reissuance of Plaintiff's refund check pursuant to 31 U.S.C. § 3343 will necessarily include the interest Plaintiff is due.

In arguing that Section 3343 specifically precludes the payment of interest for replacement checks, the Government fails to acknowledge that this is not the only statute at issue in this case. The Government is correct that, under Section 3343, a taxpayer is not entitled to interest on a reissued check. *See* 31 U.S.C. § 3343 ("The Secretary of the Treasury shall pay from the [Check Forgery Insurance] Fund . . . the amount of the check *without interest*[.]" (emphasis added)). Section 3343 generally applies to all lost or stolen checks, regardless of circumstance or originating agency. *Id.* (requiring only that the check be "drawn on the Treasury or a depositary designated by the Secretary). But, Section 3343 does not prohibit the IRS from awarding interest, pursuant to *other statutes or court orders*, and the Government cites to no authority to the contrary. Gov't Resp. 4.[7] And, the June 18, 2012 Complaint makes it clear that Plaintiff is pursuing a tax refund claim under 28 U.S.C. § 1346, in addition to relief pursuant to 31 U.S.C. § 3343. Nevertheless, for the reasons discussed above, when Plaintiff receives the reissued check, he will be receiving interest therein, pursuant to 26 C.F.R. § 301.6611-1. To the extent that Plaintiff believes he is entitled to interest subsequent to May 6, 2009, the court construes 26 C.F.R. § 301.6611-1(g) as precluding such relief. *See* 26 C.F.R. § 301.6611-1(g) ("If an overpayment of tax is refunded, interest shall be allowed from the date of the overpayment to a date determined by the district director or the director of the regional service

---

[7] The Government's citation to *Clark*, 206 F. Supp. 2d 954, is irrelevant, because *Clark* did not involve a claim for interest, but only a request for a replacement check and related tort allegations. *See Clark*, 206 F. Supp. 2d at 956 (discussing 31 U.S.C. § 3343); *see also Clark*, 326 F.3d at 912 n.1 (noting only that § 3343 allows "the Secretary of the Treasury to issue replacement checks, without interest").

center, *which shall be not more than 30 days prior to the date of the refund check.*" (emphasis added)).

In other words, since Plaintiff will receive the tax overpayment *with* interest, in the amount of $1,182.46, no additional interest is due.

### c. Punitive Damages.

In addition to reissuance of the 2007 tax refund check due him, Plaintiff seeks $1,182.46 in punitive damages pursuant to 31 U.S.C. § 3343. Compl. at 4–5. Section 3343, however, does not provide for punitive damages. *See* 31 U.S.C. § 3343(b) (allowing only for payment from the Check Forgery Insurance Fund to replace stolen Government-issued checks). And Plaintiff has identified no other independent basis to allow for the award of punitive damages. To the extent that the June 18, 2012 Complaint alleges tortious actions on the part of the Government in the misappropriation of Plaintiff's 2007 Federal income tax refund, the United States Court of Federal Claims does not have jurisdiction to hear claims under the Federal Tort Claims Act. *See* 28 U.S.C. § 1346(b)(1) (granting exclusive jurisdiction to federal district courts to hear tort claims against the United States). Moreover, the Federal Tort Claims Act does not waive sovereign immunity for "[a]ny claim arising in respect of the assessment or collection of any tax." 28 U.S.C. § 2680(c); *see also Aetna Cas. & Sur. Co. v. United States*, 71 F.3d 475, 477–78 (2d Cir. 1995) (holding that payment of a refund falls within § 2680(c)). Therefore, Plaintiff's request for punitive damages is denied.

### d. The Offset.

The Government argues that, if Plaintiff has a qualifying debt, payment from the Check Forgery Insurance Fund or payment resulting from judgment of the United States Court of Federal Claims "must be subject to offset under the Treasury Offset Program." Gov't Resp. 6. The Government, however, did not file a counterclaim in this case. And to the court's knowledge, has not filed an action for an offset in another case. Therefore, Plaintiff's request for a declaratory judgment is not ripe and a declaratory judgment on this issue would constitute an impermissible advisory opinion because, at present, there is no "case or controversy" as to the offset. *See United Pub. Works of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 116 (1947) ("It is clear that the declaratory judgment procedure is available in the federal courts only in cases involving actual controversies and may not be used to obtain an advisory opinion in a controversy not yet arisen."). If the Government withholds payment, pursuant to the Treasury Offset Program, Plaintiff may file a complaint in the *appropriate venue* at that time.

## IV. CONCLUSION.

For these reasons, Plaintiff's December 6, 2013 Motion For Summary Judgment is granted-in-part and denied-in-part. The Government is ordered to issue a check in the amount of $1,182.46, pursuant to 31 U.S.C. § 3343.

**IT IS SO ORDERED.**

SUSAN G. BRADEN
Judge

13